fUNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DARIO RODRIGUEZ,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>ADAM ENDEL, *et al.*,<br><br>　　　　　　Defendants. | 3:16-cv-00143-MMD-CLB<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1] |

This case involves a civil rights action filed by Plaintiff Dario Rodriguez ("Rodriguez") against Defendants Alejandro Arias-Flores, Kelly Belanger, Joshua Bissell, Miguel Luna, Christopher Staggs, Melissa Travis, and Maria Ward (collectively referred to as "Defendants").[2] Currently pending before the court is Defendants' motion for summary judgment (ECF Nos. 101, 103).[3] Rodriguez responded (ECF Nos. 110, 112)[4] and no reply was filed. Having thoroughly reviewed the record and papers, the court hereby recommends that Defendants' motion for summary judgment (ECF No. 101) be granted.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

Rodriguez is an inmate in the custody of Nevada Department of Corrections ("NDOC") and is currently housed out of state at the Columbia Correctional Institution in

---

[1] This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2] Claims against Matthew Bergstrom were allowed to proceed past screening, (*See* ECF No. 30), however he was dismissed from the action pursuant to Fed.R.Civ.P. 4(m), as service was not effectuated (ECF No. 109). Additionally, while numerous other defendants were named in the second amended complaint (*See* ECF No. 27), the court dismissed those defendants from this action at screening (ECF No. 30).

[3] ECF No. 103 is an errata to the motion for summary judgment, which includes various declarations in support of the motion for summary judgment.

[4] ECF No. 112 is labeled as evidence in support of Rodriguez's opposition to the motion for summary judgment.

Lake City, Florida. (ECF No. 63.) On October 3, 2017, Rodriguez filed a Second Amended Complaint ("SAC") pursuant to 42 U.S.C. § 1983. (ECF No. 27.) In the SAC, Rodriguez sues Defendants for events that took place at Ely State Prison ("ESP"). (*Id.*) Pursuant to 28 U.S.C. § 1915A(a), the court screened Rodriguez's SAC on October 19, 2018. (ECF No. 30.) The court allowed Rodriguez to proceed on the following: (1) the portion of Count I claim alleging due process violations against Defendants; and (2) the Count IV claim alleging excessive force against Defendants Bissell and Luna. (*Id.*) The rest of the claims in the SAC were dismissed. (*Id.*)

### A. Count I – Due Process Claim

The Count I claim alleges the following: On several occasions, Rodriguez was placed in disciplinary segregation for things he did not do. (ECF No. 27 at 6.) He alleges that officers were setting him up. (*Id.*) Rodriguez alleges the following incidents in support of this allegation:

1. On December 8, 2011, Ward said she saw sexual acts she did not see.
2. On November 9, 2012 and December 28, 2012, Bellinger accused Rodriguez of abusive language just to keep Rodriguez oppressed.
3. On August 7, 2015, Rodriguez was accused of assault by Bissell, Luna, and Staggs.
4. On June 11, 2016, Arias-Flores accused Rodriguez of refusing a cell search.
5. On December 9, 2016, Arias-Flores accused Rodriguez of having illegal paraphernalia.
6. On November 29, 2016, Travis accused Rodriguez of false threats.

(*Id.* at 6-7.)

Rodriguez alleges that officers were trying to keep him locked down in segregation for years at a time and that the segregation created an atypical and significant hardship. (*Id.* at 7.) The conditions were different and more restrictive than those in the general population or in protective segregation. (*Id.*) Rodriguez was placed in shackles for longer periods of time, locked behind closed doors, and was kept cold and dirty with only one blanket and restricted clothes. (*Id.*) "They" always believed staff's story over Rodriguez's

and kept Rodriguez locked down for long periods of time. (*Id.*) Based on the allegations, Rodriguez alleged a colorable Fourteenth Amendment due process claim against Defendants.

### B.   Count IV – Excessive Force Claim

The Count IV claim alleges the following: On August 7, 2015, Bissell and Luna were assigned to relocate Rodriguez from building 9C to protective custody. (ECF No. 27 at 11.) Bissell handcuffed Rodriguez out of sight of witnesses, slammed him head-first on the concrete, and beat him. (*Id.*) After Bissell finished beating Rodriguez, he acted as if he was going to strangle Rodriguez to death. (*Id.*) Luna was there while Bissell was beating Rodriguez and also threatened to kill Rodriguez. (*Id.*) Based on the allegations, Rodriguez alleged a colorable Eighth Amendment excessive force claim against Defendants Bissell and Luna.

### C.   Defendants' Motion for Summary Judgment

On January 6, 2020, Defendants filed a motion for summary judgment (ECF Nos. 101, 103.) Defendants assert they are entitled to summary judgment because (1) material facts do not demonstrate a violation of Rodriguez's Fourteenth Amendment rights, (2) material facts do not demonstrate a violation of Rodriguez's Eighth Amendment rights, (3) Rodriguez failed to exhaust his administrative remedies as to certain portions of his claims, (4) portions of Rodriguez's claims are barred by the applicable statute of limitations, and (5) Defendants are entitled to qualified immunity. (*Id.*) Rodriguez opposed the motion (ECF Nos. 110, 112), and no reply was filed.

## II.   LEGAL STANDARD

Summary judgment allows the court to avoid unnecessary trials. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court properly grants summary judgment when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). At this stage, the court's role is to verify that reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

Summary judgment proceeds in burden-shifting steps. A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted). The nonmoving party may defeat the summary

4

judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. Although the nonmoving party need not produce authenticated evidence, Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported and meritorious summary judgment motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence and the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

### III. DISCUSSION

#### A. Civil Rights Claims under 42 U.S.C. § 1983

42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135 1139 (9th Cir. 2000)). The statute "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights[,]" *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and therefore "serves as the procedural device for enforcing substantive provisions of the Constitution and federal statutes." *Crumpton v. Almy*, 947 F.2d 1418, 1420 (9th Cir. 1991). Claims under section 1983 require a plaintiff to allege (1) the violation of a federally-protected right by (2) a person or official acting under the color of state law. *Warner*, 451 F.3d at 1067. Further, to prevail on a § 1983 claim, the plaintiff must establish each of the elements required to prove an infringement of the underlying constitutional or statutory right.

#### B. Count I – Fourteenth Amendment Due Process Claim

Defendants first argue they are entitled to summary judgment as to the due process claim because (1) Rodriguez has provided no evidence beyond his "uncorroborated and

5

self-serving" allegations to support his claim that Defendants lodged false allegations against him in order to keep him in disciplinary segregation, and (2) material facts do not show Rodriguez suffered any "atypical and significant hardship" while in disciplinary segregation. (ECF No. 101 at 5-8.)

Fourteenth Amendment claims for denial of procedural due process entail two components. First, the court must determine that the plaintiff possessed a constitutionally protected interest, such that due process protections apply. *See Ingraham v. Wright*, 430 U.S. 651, 672-73 (1977). Second, and if so, the court must examine the level of due process demanded under the circumstances. *See id.*; *see also Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). A claim lies only where the plaintiff has a protected interest, and the defendant's procedure was constitutionally inadequate.

The Fourteenth Amendment of the United States Constitution guarantees all citizens, including inmates, due process of law. However, the Constitution protects only certain interests with the guarantees of due process; an inmate's right to procedural due process arises only when a constitutionally protected liberty or property interest is at stake. *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005). Such interests may arise from the Constitution itself or from state law.

Under the Due Process Clause, an inmate does not have liberty interests related to prison officials' actions that fall within "the normal limits or range of custody which the conviction has authorized the State to impose." *Sandin v. Conner,* 515 U.S. 472, 478 (1995) (citing *Meachum v. Fano,* 427 U.S. 215, 225 (1976)). The Clause contains no embedded right of an inmate to remain in a prison's general population. *Id.* at 485–86.

State law also may create liberty interests. Where segregated housing or other prison sanctions "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life[,]" due process protections arise. *Sandin,* 515 U.S. at 483–84. What matters is not the particular label or characterization of the segregation or sanction, but instead, its underlying nature: "[n]o matter how a prisoner's segregation (or other deprivation) is labeled by the prison or characterized by the prisoner, a court must

examine the substance of the alleged deprivation and determine whether it constitutes an atypical and significant hardship...." *Hernandez v. Cox,* 989 F.Supp.2d 1062, 1068–69 (D.Nev. 2013).

When conducting the atypical-hardship inquiry, courts examine a "combination of conditions or factors...." *Keenan v. Hall,* 83 F.3d 1083, 1089 (9th Cir. 1996). These include: (1) the extent of difference between segregation and general population; (2) the duration of confinement; and (3) whether the sanction extends the length of the prisoner's sentence. *See Serrano,* 345 F.3d at 1078 (citing and discussing *Sandin,* 515 U.S. at 486–87). That a particular punishment or housing placement is more restrictive than administrative segregation or general population privileges is, alone, not enough: even where "the conditions in segregation are worse than those a prisoner will typically encounter in prison, the Court must still consider whether the conditions are extreme enough in nature and duration or whether they will necessarily affect the length of a prisoner's sentence." *Hernandez,* 989 F.Supp.2d at 1069.

Rodriguez's due process claim is based on his contention that various Defendants have made false allegations against him at various times during his incarceration with NDOC. (ECF No. 27 at 6-7.) The parties do not dispute that Rodriguez has spent a lengthy amount of time in disciplinary segregation or detention while incarcerated—a review of Rodriguez's disciplinary history report shows he has spent close to ten years in segregation since 2001. (*See* ECF No. 101-1.) According to his disciplinary history report, since 2015 Rodriguez was placed into disciplinary segregation on two occasions. (*Id.* at 2.) First, Rodriguez was sentenced to 18 months of disciplinary segregation in September 2015 for the assault stemming from his excessive force claim. (*Id.*) Second, he was sentenced to ninety days of disciplinary segregation in July 2016 for organizing a work stoppage/demonstration. (*Id.*) A review of the notice of charges for the August 2015 assault and the summary of the hearing for the notice of charges, shows Rodriguez was given a proper hearing before being sentenced to disciplinary segregation. (*See* ECF Nos. 101-5, 101-7, 101-8.) Rodriguez was served with the notice of charges within

7

twenty-four hours of the hearing, he was given an opportunity to present evidence and call witnesses, and he did not request counsel. (ECF No. 101-8 at 3-4); *See Wolff v. McDonnell*, 418 U.S. 539, 563-70 (1974) (outlining what prison officials must provide an inmate when a protected liberty interest exists and inmate faces disciplinary charges).

Aside from the allegations in his complaint, Rodriguez does not provide any evidence that his placement in disciplinary segregation was based on false allegations. Rodriguez's opposition to the motion for summary judgment merely summarizes case law regarding due process (*See* ECF No. 110 at 15-18, 43), but does not provide any argument or evidence to support his due process claim. Mere assertions and pleading allegations will not defeat a properly supported and meritorious summary judgment motion. *Matsushita*, 475 U.S. at 586–87. Further, while it is possible that an 18-month term in disciplinary segregation could be an "atypical and significant hardship," Rodriguez does not make any such allegation or provide any evidence showing this to be the case. *See Brown v. Oregon Dept. of Corrections*, 751 F.3d 983, 987-88 (9th Cir. 2014) (twenty-seven-month confinement in segregation without meaningful review imposed an atypical and significant hardship.) Rodriguez does not allege that he was not given meaningful review of his classification status while in disciplinary segregation and he does not provide evidence that conditions in disciplinary segregation were atypical in comparison to conditions in administrative segregation or general population housing. (*See* ECF No. 110.) Thus, because the material facts do not demonstrate a deprivation of Rodriguez's Fourteenth Amendment due process rights, the court recommends that Defendants' motion for summary judgment be granted as to the due process claim.[5]

### C. Count IV – Eighth Amendment Excessive Force Claim

Defendants first argue they are entitled to summary judgment as to the excessive force claim because Rodriguez failed to properly exhaust his administrative remedies. (ECF No. 101 at 12.)

---

[5] Because the court finds that no due process violation occurred, it need not address Defendants' arguments related to statute of limitations or qualified immunity.

### 1. Exhaustion under the PLRA

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The requirement's underlying premise is to "reduce the quantity and improve the quality of prisoner suits" by affording prison officials the "time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation." *Id.* at 524–25.

The PLRA requires "proper exhaustion" of an inmate's claims. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Proper exhaustion means an inmate must "use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009) (citing *Woodford*, 548 U.S. at 90). Thus, exhaustion "demands compliance with an agency's deadlines and other critical procedural rules because no adjudication system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90–91.

In the Ninth Circuit, a motion for summary judgment will typically be the appropriate vehicle to determine whether an inmate has properly exhausted his or her administrative remedies. *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014). "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id.* at 1166. The question of exhaustion "should be decided, if feasible, before reaching the merits of a prisoner's claim." *Id.* at 1170.

Failure to exhaust is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007). The defendant bears the burden of proving that an available administrative

9

remedy was unexhausted by the inmate. *Albino*, 747 F.3d at 1172. If the defendant makes such a showing, the burden shifts to the inmate to "show there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting *Albino*, 747 F.3d at 1172).

### 2. NDOC's Inmate Grievance System

Administrative Regulation ("AR") 740 governs the grievance process at NDOC institutions. An inmate must grieve through all three levels: (1) Informal; (2) First Level; and (3) Second Level. (*See generally* ECF No. 101-12.) The inmate may file an informal grievance within six months "if the issue involves personal property damages or loss, personal injury, medical claims or any other tort claims, including civil rights claims." (*Id.* at 6.) The inmate's failure to submit the informal grievance within this period "shall constitute abandonment of the inmate's claim at this, and all subsequent levels." (*Id.* at 7.) NDOC staff is required to respond within forty-five days. (*Id.* at 8.) An inmate who is dissatisfied with the informal response may appeal to the formal level within five days. (*Id.*)

At the first formal level, the inmate must "provide a signed, sworn declaration of facts that form the basis for a claim that the informal response is incorrect," and attach "[a]ny additional relevant documentation." (*Id.*) The grievance is reviewed by an official of a higher level, who has forty-five days to respond. (*Id.* at 9.) Within five days of receiving a dissatisfactory first-level response, the inmate may appeal to the second level, which is subject to still-higher review. (*Id.*) Officials are to respond to a second-level grievance within sixty days, specifying the decision and the reasons the decision was reached. (*Id.*) Once an inmate receives a response to the second-level grievance, he or she is considered to have exhausted available administrative remedies and may pursue civil rights litigation in federal court.

///

### 3. Exhaustion of Rodriguez's Claims

Rodriguez's claim against Bissell and Luna arises from an incident that allegedly occurred at ESP on August 7, 2015. (ECF No. 27 at 11.) Defendants argue Rodriguez did not properly exhaust his available administrative remedies, as he failed to follow the grievance procedure outlined by AR 740. (ECF No. 101 at 10-12.) Specifically, Defendants contend that while Rodriguez filed an informal grievance stemming from the incident, he failed to appeal the grievance to the next level after it was denied. (ECF No. 101-6.) Further, Defendants assert that Rodriguez filed grievances substantially based on the alleged excessive force incident in March and April of 2016, past the six-month filing deadline. (ECF Nos. 101-9, 101-10.)

Rodriguez's opposition states that he did exhaust his grievances and the Defendants are "distorting the facts in light of law enforcement and year's (sic) of experience being able to sway or draw favor with the Court[]." (ECF No. 110 at 34.) Rodriguez further states that Defendants "stole the grievance, distorted the grievance or made them become obsolete to the point all they would do is den[y] them or fabricate more [lies] about the incompletion of the grievance or the negality (sic) of the grievance not being up to par[] with [their] standards." (*Id.* at 35.) Rodriguez also states that he submitted every grievance "informal, to formal, to 3rd level" up to the Director's office. (*Id.* at 36.)

A review of Grievance #20063005921 filed on August 11, 2015, shows the grievance was denied at the informal level. (ECF No. 101-6 at 2.) There is no evidence Rodriguez appealed the decision up to the first level. AR 740 expressly requires that an inmate must file an informal grievance and proceed through each level of grievance thereafter in order to have exhausted the administrative remedies process. (*See generally* ECF No. 101-12.) Further, the other two grievances related to the alleged excessive force incident were filed in March and April 2016, respectively. (*See* ECF Nos. 101-9, 101-10.) AR 740 requires an inmate to file an informal grievance within six months "if the issue involves… civil rights claims" and an inmate's failure to submit the informal grievance

within this period "shall constitute abandonment of the inmate's claim at this, and all subsequent levels." (ECF No. 101-12 at 6-7.) Rodriguez cannot circumvent the requirements of 740 by not completing the grievance process or attempting to start the grievance process after the six-month filing deadline. Therefore, the court finds that Rodriguez failed to exhaust his administrative remedies pursuant to AR 740 prior to initiating this action.

The burden now shifts to Rodriguez "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172 (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n. 5 (9th Cir. 1996)). Rodriguez provides no evidence to show that administrative remedies were unavailable to him. Rodriguez instead argues that he did exhaust his administrative remedies, without any evidence to support his assertion. (*See* ECF No. 110 at 34-36.)

Exhaustion plays a very important role in both the prison and court settings. "Exhaustion gives an agency 'an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court,' and it discourages 'disregard of [the agency's] procedures.'" *Woodford v.* Ngo, 548 U.S. 81, 89 (2006) (quoting *McCarthy v. Madigan,* 503 U.S. 140, 145 (1992)). Exhaustion also "promotes efficiency." *Id.* Rodriguez does not provide any credible evidence that he exhausted his administrative remedies and he does not present any evidence that such remedies were effectively "unavailable." Accordingly, the court concludes that Rodriguez failed to exhaust available administrative remedies prior to filing this action, and that Defendants' motion for summary judgment should be granted as to the excessive force claim.[6]

///

///

---

[6] Because the court finds that Rodriguez failed to exhaust his administrative remedies as to the excessive force claim, it need not address Defendants' other arguments.

## V. CONCLUSION

For good cause appearing and for the reasons stated above, the court recommends that defendants' motion for summary judgment (ECF No. 101) be granted.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## VI. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment (ECF No. 101) be **GRANTED**; and

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** accordingly.

**DATED**: May 13, 2020.

_____
**UNITED STATES MAGISTRATE JUDGE**